AO241
(Rev. 10/07)

Page 1

## PETITION UNDER 28 USC § 2254 FOR WRIT OF
## HABEAS CORPUS BY A PERSON IN STATE CUSTODY

United States District Court     District:

**U.S. DISTRICT COURT EASTERN DISTRIST OF LOUISIANA**
EASTERN DISTRICT OF LOUISIANA

Name (under which you were convicted)

**GARY NORDGREN**    FILED   FEB 05 2010

Docket or Case No:

*18- 0072 H(1)*

Place of Confinement:

WILLIAM W. BLEVINS
CLERK

Prisoner No:

**RAYBURN CORRECTIONAL CENTER**   512708

Petitioner (include the name under which you were convicted)     Respondent (authorize person having custody of petitioner)

**GARY NORDGREN**     v.     **W.S. MCCAIN, WARDEN**
**RAYBURN CORRECTIONAL CENTER**

The Attorney General of the State of Louisiana

## PETITION

1. (a) Name and location of court that entered the judgment of conviction you are challenging:
**22nd Judicial district Court, Parish of St, Tammany**

   (b) Criminal docket or case number (if you know): x **2014 KA 1183**

2. (a) Date of the judgment of conviction (if you know): **July 22, 2010**

   (b) Date of sentencing: **September 2, 2010**

3. Length of sentence: **49 ½ yrs under the Habitual Offender Bill**

4. In this case, were you convicted on more than one count or of more than one crime?    ☐ Yes   **X** No

5. Identify all crimes of which you were convicted and sentenced in this case: **Aggravated Incest**

6. (a) What was your plea? (Check one)

        **X** (1) Not guilty      ☐ (3) Nolo contendere (no contest)

        ☐ (2) Guilty      ☐ (4) Insanity plea

   (b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

   (c) If you went to trial, what kind of trial did you have? (Check one)

        **X** Jury      ☐ Judge only   ☐

**TENDERED FOR FILING**

7. Did you testify at a pretrial hearing, trial or a post-trial hearing?

        **X** Yes      ☐ No

FEB 05 2018

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

Fee
Process
X Dkt
CtRmDep
Doc. No.

AO241
(Rev. 10/07)

9. If you did appeal, answer the following:

   a. Name of court:_____

   b. Docket or case number (if you know): _____

   c. Result: _____

   d. Date of result: _____

   e. Citation to the case (if you know): _____

   f.   Grounds raised:

        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____

   (g) Did you seek further review by a high state court?    ❑ Yes    ❑ No

       If yes, answer the following:

       (1) Name of court: _____

       (2) Docket or case number (if you know): _____

       (3) Result: _____

       (4) Date of result: _____

       (5) Citation to the case (if you know): _____

       (6) Grounds raised:

        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____

   (h) Did you file a petition for certiorari in the United States Supreme Court?    ❑ Yes    ❑ No

       If yes, answer the following:

       (1) Docket or case number (if you know): _____

AO241
(Rev. 10/07)

Page 3

    (2) Result: _____

    (3) Date of result (if you know): _____

    (4) Citation to the case (if you know): _____

10.   Other than the direct appeals listed above, have you previously filed any petitions, applications, or motions concerning this judgment of conviction in any state court?    ❑ Yes      ❑ No

11. If your answer to Question 10 was "Yes," give the following information:

(a)  (1)  Name of Court: _____

    (2)  Docket or case number (if you know): _____

    (3)  Date of filing (if you know): _____

    (4) Nature of the proceeding: _____

    1)  (5) Grounds raised:

_____
_____
_____
_____
_____
_____
_____
_____
_____

    (6)  Did you receive an evidentiary hearing on your petition, application or motion?

    ❑ Yes      ❑ No

    (7)  Result: _____

    (8)  Date of result (if you know): _____

(b)  If you filed any second petition, application or motion give the same information:

    (1) Name of court: _____

    (2) Docket or case number (if you know): _____

    (3) Date of filing (if you know): _____

    (4) Nature of the proceeding: _____

    (5) Grounds raised: _____

AO241
(Rev. 10/07)

Page 4

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

□ Yes         □ No □

(7) Result: _____

(8) Date of result (if you know): _____

(c)   If you filed any third petition, application, or motion, given the same information: □

(1) Name of Court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?
    □ Yes         □ No □

(7) Result: _____

(8) Date of result (if you know): _____

(d )   Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

| | | | |
|---|---|---|---|
| (1) First petition: | □ Yes | □ No |
| (2) Second petition: | □ Yes | □ No |
| (3) Third petition: | □ Yes | □ No |

12.   For this petition, state every ground on which you claim that you are being held in violation of the Constitution, Laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground..

> Caution: To proceed in the federal court, you must ordinarily first exhaust your available state-court remedies as to each ground on which you request action by the federal court. Also, if you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE: THE INDICTMENT, USED FOR CHARGING THE PETITIONER WAS AN IMPROPER CAPITAL OFFENSE, WAS IMPROPERLY AMENDED, AND OR THE EVIDENCE AT TRAIL AMOUNTS TO A FATAL VARIANCE**

(a)  Supporting facts (do not argue or cite law. Just state the specific facts that support your claim.):

**SEE MEMORANDUM IN SUPPORT OF HABEAS CORPUS ATTACHED HERETO.**

(b) If you did not exhaust your state remedies on Ground One, explain why:
**Exhausted each remedy before the State Courts:**

(c)      **Direct Appeal of Ground One:**

(1) If you appealed form the judgment of conviction, did you raise this issue?      **X** Yes  ❑    No ❑

(2) If you did not raise this issue in your direct appeal, explain why:

(d)  Post-Conviction Proceedings:

(1)  Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

❑ Yes        ❑ No

(2)  If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion or petition?                    ❑  Yes    ❑    No

(4) Did you appeal from the denial of your motion or petition?              ❑  Yes    ❑    No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue on appeal?    ❑  Yes    ❑    No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

AO241
(Rev. 10/07)

Page 6

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

(e) **Other remedies:** Describe any other procedures (such as habeas corpus administrative remedies, etc.) that you have

Used to exhaust your state remedies on Ground One:_____

_____

**GROUND TWO: THE TRIAL COURT REVERSIBLY ERRED FROM FAILING TO ADJUDICATE THE MOTION TO SUPPRESS THE EVIDENCE CAUSING THE JURY TO BE IMPROPERLY INFLUENCED BASED ON UNRELIABLY TAINTED EVIDENCE**

(b) Supporting facts (do not argue or cite law. Just state the specific facts that support your claim.):

<u>**SEE MEMORANDUM IN SUPPORT OF HABEAS CORPUS ATTACHED HERETO.**</u>

(b) If you did not exhaust your state remedies on Ground Two, explain why:
**Exhausted each remedy before the State Courts:**

   (f)      **Direct Appeal of Ground Two:**

     (1) If you appealed form the judgment of conviction, did you raise this issue?   ❑ Yes ❑ No ❑

     (2) If you did not raise this issue in your direct appeal, explain why:

(g) Post-Conviction Proceedings:

     (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

      ❑ Yes     ❑ No

     (2) If your answer to Question (d)(1) is "Yes," state:

     Type of motion or petition: _____

     Name and location of the court where the motion or petition was filed: _____

     Docket or case number (if you know): _____

     Date of the court's decision: _____

     Result (attach a copy of the court's opinion or order, if available): _____

     (3) Did you receive a hearing on your motion or petition?     ❑ Yes ❑ No

     (4) Did you appeal from the denial of your motion or petition?     ❑ Yes ❑ No

     (5) If your answer to Question (d)(4) is "Yes," did you raise this issue on appeal?     ❑ Yes ❑ No

     (6) If your answer to Question (d)(4) is "Yes," state:

AO241
(Rev. 10/07)                                                                                           Page 7

Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

(h) **Other remedies:** Describe any other procedures (such as habeas corpus administrative remedies, etc.) that you have

Used to exhaust your state remedies on Ground Two: _____

_____

_____


**GROUND THREE:**
**THE EVIDENCE ADDUCED BY THE STATE WAS NOT SUFFICIENT TO UPHOLD A CONVICITON ON THE CRIME CHARGED IN THE INDICTMENT**

(b) Supporting facts (do not argue or cite law. Just state the specific facts that support your claim.):

**SEE MEMORANDUM IN SUPPORT OF HABEAS CORPUS ATTACHED HERETO.**

(b) If you did not exhaust your state remedies on Ground Three, explain why:
**Exhausted each remedy before the State Courts:**

(i)          **Direct Appeal of Ground Three:**

(1) If you appealed form the judgment of conviction, did you raise this issue?   **X** Yes  ❑  No ❑

(2) If you did not raise this issue in your direct appeal, explain why:

(j)   Post-Conviction Proceedings:

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

❑ Yes      ❑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

AO241
(Rev. 10/07)

Page 8

       (3) Did you receive a hearing on your motion or petition?      ❑ Yes  ❑  No

       (4) Did you appeal from the denial of your motion or petition?      ❑ Yes  ❑  No

       (5) If your answer to Question (d)(4) is "Yes," did you raise this issue on appeal?      ❑ Yes  ❑  No

       (6) If your answer to Question (d)(4) is "Yes," state:

       Name and location of the court where the appeal was filed: _____

       Docket or case number (if you know): _____

       Date of the court's decision_____

       Result (attach a copy of the court's opinion or order, if available): _____

       (7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:
       _____

    (k) **Other remedies:** Describe any other procedures (such as habeas corpus administrative remedies, etc.) that you have

Used to exhaust your state remedies on Ground Three: _____
_____
_____

**GROUND FOUR: THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO CONFRONTATION AND CROSS EXAMINATION WHEN HIS ACCUSER DID NOT TAKE THE STAND AND AN IMPROPER EVIDENTIARY FOUNDATION RESULTED IN THE INTRODUCTION OF A TAPE INTERVIEW**

    (c) Supporting facts (do not argue or cite law. Just state the specific facts that support your claim.):

       <u>SEE MEMORANDUM IN SUPPORT OF HABEAS CORPUS ATTACHED HERETO.</u>

    (b) If you did not exhaust your state remedies on Ground Four, explain why:
       **Exhausted each remedy before the State Courts:**

    (l)       **Direct Appeal of Ground Four:**

       (1) If you appealed form the judgment of conviction, did you raise this issue?   ❑ Yes  ❑ No  ❑

       (2) If you did not raise this issue in your direct appeal, explain why:

    (m) Post-Conviction Proceedings:

       (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

       ❑ Yes       ❑ No

       (2) If your answer to Question (d)(1) is "Yes," state:

AO241
(Rev. 10/07)

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☐ No

(4) Did you appeal from the denial of your motion or petition?  ☐ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue on appeal?  ☐ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue: _____

(n) **Other remedies:** Describe any other procedures (such as habeas corpus administrative remedies, etc.) that you have

Used to exhaust your state remedies on Ground Four: _____
_____
_____

**GROUND FIVE**:

**THE TAPED INTERVIEW EVINCED THAT THE WITNESS WAS IMPROPERLY COACHED BY THE STATE AND THEREFORE THE TAPE WAS NOT RELIABLE**

(d)  Supporting facts (do not argue or cite law. Just state the specific facts that support your claim.):

**SEE MEMORANDUM IN SUPPORT OF HABEAS CORPUS ATTACHED HERETO.**

(b) If you did not exhaust your state remedies on Ground Five, explain why:
**Exhausted each remedy before the State Courts:**

(o)  **Direct Appeal of Ground Five:**

(1) If you appealed form the judgment of conviction, did you raise this issue?   Yes  ☐  No ☐

(2) If you did not raise this issue in your direct appeal, explain why:

(p)  Post-Conviction Proceedings:
(1)  Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

AO241
(Rev. 10/07)

    ❑ Yes    ❑ No

(2)  If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(3) Did you receive a hearing on your motion or petition?    ❑ Yes  ❑  No

(4) Did you appeal from the denial of your motion or petition?    ❑ Yes  ❑  No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue on appeal?    ❑ Yes  ❑  No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:
_____

(q)  **Other remedies:** Describe any other procedures (such as habeas corpus administrative remedies, etc.) that you have

Used to exhaust your state remedies on Ground Five: _____
_____
_____

13.    Please answer these additional question about the petition you are filing:

(a)  Have all grounds for relief that you have presented in this petition been presented to the highest state court
having jurisdiction?  ❑ Yes    ❑ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not
presenting them: **N/A**

(b)  Is there any ground in this petition that has not been presented in some state or federal court?  If so,
Ground or grounds have not been presented, and state your reasons for not presenting them:
**All Grounds have been exhausted before the State Court**

AO241
(Rev. 10/07)

Page 11

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

        that you challenge in this petition?        ❑Yes    No  **X**

        If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues

        raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy

        of any court opinion or order, if available.

        _____

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

        the judgment you are challenging?   ❑ Yes         **X** No

        If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the raised.

        _____

16.    Give the name and address, if known, of each attorney who represented you in the following stages of the

        judgment you are challenging:

        (a)   At preliminary hearing: _____

        (b)   At arraignment and plea: _____

        (c)   At trial: _____

        (d)   At sentencing: _____

        (e)   On appeal: _____

        (f)   In any post-conviction proceeding: _____

        (g)   On appeal from any adverse ruling in a post-conviction proceeding: _____

17.    Do you have any future sentence to serve after you complete the sentence imposed by the judgment that you are
        challenging?            ❑ Yes         ❑ No

18.    **TIMELINESS OF PETITION**: If your judgment of conviction became final over one year ago, you must explain

        The one-year statue of limitation as contained in **28 U.S.C. § 2244(d)** does not bar your petition.*
        **(SEE MEMORANDUM IN SUPPORT OF)**

        _Gary Crawgren_ 512703
        **Petitioner**

AO241
(Rev. 10/07)

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255(d) provides in

part that:

(1)     A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

       (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

       (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

       (C )     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to case on collateral review; or

       (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction of other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:

_____

_____

_____

_____

_____

_____

_____

_____


                                                     _____

                                                           Signature of Attorney (if any)

AO241
(Rev. 10/07)

Page 13

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system of Rayburn Correctional Center.

Executed (signed) on _6th_ day of _March_____, 2017.

x_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT
STATE OF LOUISIANA

**GARY NORDGREN**                                    NO: _____

**VERSUS**

**ROBERT TANNER, WARDEN**
**Rayburn Correctional Center**

### MEMORANDUM IN SUPPORT OD WRIT OF HABEAS CORPUS

**INTO THE HONROABLE COURT** comes, Petitioner Gary Nordgren, who respectfully

provides this Memorandum in Support of his Application for Habeas Corpus.

**1.**

Gary Nordgren "Petitioner" hereafter, is currently confined in the Louisiana Department

of Public Safety and Corrections (DPSC), at Rayburn Correctional Center the subsidiary of

DPSC at Cottonport Louisiana.

1

## STATEMENT OF THE CASE[1]

The grand jury of the 22nd Judicial District Court returned a true bill on Count One Aggravated Incest, contrary to LA. R.S. 14:98.1 based upon a person "under the age of eighteen." Scott Gardner amended the "true bill" sua sponta on April 21, 2010 without presentation to the grand jury. (Rec.43).

At arraignment, on April 25, 2008, the record does not reflect Petitioner appeared with counsel when a not guilty plea was entered. (Rec.2) On May 12, 2008 the public defender Michael Capdeboscq appeared and allegedly waived the reading of the Bill of Information.(Rec. 3)

On August 20, 2008, defense counsel reportedly "waived" Motions, Bill of Particulars, Discovery, Inspection, and Motion for Jury Trial. The matter was continued. (Rec.10)

After several delays the matter was called on June 1, 2009, pursuant to the Motion to Recuse Honorable Judge Knight, and the motion was denied on the same day. (Rec. 13)

The matter was also continued several times until December 2, 2009, until Davidson Ehle, III made his appearance for the defense.

On April 23, 2010 the trial resumed with the testimony of Mitch Billie, Sandy Nordgren, Ben Eshleman, Detective Rachel Smith, and the petitioner Gary Nordgren. (Rec. 36)[2]

During voir dire the state exercised four preemptive strikes, the defense preemptive struck five potential jurors. Three potential jurors were excused for cause by the Court. The jury was selected and seated. (Rec. 25-27) The jury was later subsequently sequestered.

---

[1] There are three volumes of records designated in the first appeal of right. Rec. is referred to throughout and incorporated by reference to the particular page number notwithstanding the volumes that are consecutive page numbered.

[2] The transcripts of the proceeding are incorporated in the record which are referred to as (Rec.) followed by the page reference.

2

During voir dire District Attorney Scott Garden questioned prospective jurors about the complainant testifying via a video recording. Prior to the trial, state and defense addressed the issue of a DVD recording by the complainant. The issue of jury instruction about the DVD was also addressed. (Rec. 29) The record does not reflect that the State established the prerequisites for introduction of a protected person not-testimony tape.

The jury returned a verdict on the same day and on July 22, 2010 the Petitioner was before the court for a Motion for New Trial, which was denied. Subsequently the court imposed a twenty-five (25) year term of imprisonment. (Rec. 39)

The Multiple Offender Bill of Information, (Rec. 126) alleges that on August 17, 2007 the defendant was charged in docket number 406425, in the 22nd Judicial District Court for Marijuana Second Offense.

The State filed the multiple offender bill on September 2, 2010 and adjudicated the Petitioner to be a habitual second offender and re-sentenced him to 49 ½ years at hard labor. (Rec. 41-42)

On February 17, 2011 the Court refused to hear the Motion to Reconsider Sentence. (Rec. 42 A-B) A Notice of Appeal was tendered for filing and on December 16, 2010 an Order granting the appeal was set and a return date of February 25, 2011 was set. (Rec. 148)

Mary Roper, Esquire of the Louisiana Appellate Project was assigned to perfect an appeal. (Rec. 149) Several extensions to the return date were granted. (Rec. 150-152)

The right to appeal was forfeited by Mary Roper. An Out-of-Time Appeal was granted. Mary Roper failed to file any substantive issues rather a single sentence issue.

## STATEMENT MATERIAL OF FACTS

The affidavit for search warrant was offered, after the Trial Court heard preliminary Motions (Rec. 156) Madam Clerk reads the felony bill into the record after the jury was seated and, the bill being amended by Mr. Gardner. (Rec. 358)

The state offers in opening statement (Rec.361) accordingly suggesting that in the summer of 2007 Carley Eshleman was 10 years of age. Mr. Gardner then alludes to his religious belief and attempts to persuade the jury improperly based on his religious convictions. The State also vouched for the credibility of Carley who they knew would not personally appear before the trial court. The State was also fully aware in advance that a sufficient hearing was not conducted to substantiate the burden of proof on authenticity of the taped statement.

Mr. Gardner informs the jury during opening statement that between the date of June 2007, and November 2007, that the Petitioner "fooled with" the complainant which was his biological niece. (Rec. 362) The State acknowledged that the real issue in this case was the Estate of the later Mr. Nordgren and, the property that the families mutually shared. (Rec.363)

Walking through this family Estate, the States story goes, that the Petitioner's niece was called to her Uncle Gary's house and allegedly the occurrences leading to the indictment occurred. (Rec. 364)[3]

The complainant was then summoned to the Child Advocate Center whereupon several statements were elicited. (Rec. 366)[4] There were several items that were seized from the

---

[3] Since the complainant did not testify during this trial and gave several conflicting statements during the forensic questioning that was lead my ear piece from the Detectives it is hard to say exactly what the State alleged to have really occurred.

[4] It should also be noted that the questioning was not conducted in accordance with the statutory provisions that would allow the state this testimony via a tape session. A pretrial hearing was also never conducted to address this issue

Petitioner's residence and introduced during the case-in-chief as items that purportedly were used in this incident. (Rec. 366)

The complainant never attested that these objects were used and the state conceded that the complainant suggested that a syringe was used.[5] Furthermore, the State also conceded that all the medical evidence was normal and indicative that no assault occurred. (Rec. 368)

Mr. Gardner also testified that the jury would be called and that they would hear that Carley Eshleman was of the belief that she would lose the love of her "mawmaw" (Rec. 368)

Mr. Ehle informs the jury that both the Nordgren's and Eshleman's are fortunate as they reside in Folsom on a very big stretch of land. (Rec. 368), Willie Cemetery Road.

Ben Eshleman, Gary's brother-in-law and him begun to feud after the death of his father in 2005. (Rec. 371) Subsequently, Ben exalted a plan to remove the Petitioner from the Estate. (Rec. 372)

## CAMELLIA GATEWOOD

Ms. Gatewood was the school bus driver for the complainant and knew her by virtue of her school attendance within the parish. (Rec. 374)

An extensive colloquy is then exchanged as to if the perspective testimony was hearsay or whether it would be admissible to the hearsay exception as a first responder. (Rec. 380-382) Honorable Knight, although knowing that this was not a first responder incident, nevertheless allowed what would become substantial hearsay to influence this jury, and overruled the objection. (Rec. 381)

---

[5] This was one of the particular egregious examples of how the Petitioner was prejudiced by the lack of direct confrontation during the trial proceedings. There was never an ability to impeach the allegedly complainant, if in fact, she did confirm these items were the object of that assault and why her story changed consistently on the suggestion of the forensic interviewer.

5

During cross-examination Ms. Gatewood admits that the complainant denied the sexual molestation allegations. (Rec. 383) The complainant *did not ride the bus for over a week* when the alleged allegations surfaced. (Rec. 384)[6] The bus driver informed the complainant that she was molested as a child which was a very strange conversation to say the least. Supposedly the bus driver was molested by her uncle. (Rec. 385)

At the close of the first day of trial an issue arises as to the State's use of the DVD of the Child Advocacy Center. The State proposed to play the interview and not call the complainant to testify at trial. There was no pretrial hearing to address whether the DVD was properly produced in accordance with the protected persons statutes. Defense counsel did not object nor did he address the later issue about the admissibility under those circumstances. (Rec. 390)

On April 22, 2010, the second day of the trial commences over defense counsel's objection that the introduction of the tape contained other crime evidence. Herein again, there was no pretrial hearing to address the admissibility of the Tape of other crimes. The defense was completely taken by surprise about the tapes and evidence that would be allowed to be introduced. (Rec. 395)

The State suggested that it can either enter a stipulation or admonishment on the issue or either redact the tapes. (Rec. 396) Defense counsel specifies that this would not solve the issue that the presumption of prejudice would attach once the issue was raised by the State. (Rec. 396-397)

The court decided to instruct the jury regarding a portion which might not be appropriate for them to listen to. (Rec. 400)

---

[6] This makes the "first responder" hearsay exception very dubious at best. It is apparent that the complainant "denied" the molestation allegation, then did not ride the bus for one week, and during this week the alleged allegations surfaced.

**RACHEL SMITH**

Ms. Smith was called and testified she was a forensic interviewer and employee of the St. Tammany Parish Sheriff's Office. She conduced sex crime interviews for the Sheriff's Department. (Rec. 402)

Detective Smith scheduled a forensic interview for the complainant at the CAC, the Hope House in Covington. (Rec. 403) Describing the procedures, the testimony of the complainant, and the summaries of the Hope House interview, defense counsel objects to the leading nature of this testimony. (Rec. 404)

During the direct examination Detective Smith testified that she was present during the interview. Detective Smith not only monitored the interview but also lead the forensic interviewer in the submission of the leading questions asked of the complainant. (Rec. 406) Notwithstanding, the tape was played for the jury and the complainant never testified during these proceedings. (Rec. 408-409)

After the CAC interview the medical examiner conducted his physical of the complainant. (Rec. 406)

During cross examination Detective Smith denied that the complainant's statements were inconsistent about the use of a needle. (Rec. 431), cf: (433), (434), (435), and (337).

Detective Smith acknowledges in her report she explained "Carley provided a clear and detailed history of several abuse involving her uncle, Gary Nordgren". Supposedly she described taking off her clothes and Gary placing a suppository and needle inside her vaginal cavity. During the medical examination, however, the finding of the examination was within normal limits. (Rec. 433-35, 437)

7

Defense counsel pointed out that the State now changed the entire story of a needle to an applicator. (Rec. 437) Detective Smith acknowledged that an applicator, as it was then changed to describe, would be inconsistent with the story that Carley stated-that she was poked.(Rec. 438)

Detective Smith substantially impeached the testimony of Ms. Gatewood on the issues in the written report describing this incident. (Rec. 439-441) Detective Smith also admitted that Ben Eshleman was her co-worker and the father of the complainant. (Rec. 441-442) Furthermore, Detective Smith testified that she would not understand why that Ben would be recording and listening to all Gary's phone calls from the parish facility or why he would have been provide a recording of those taped DVD calls. (Rec. 442)

Detective Smith also related that if there was a family feud that was commencing, among Gary and Ben, it would be a significant fact and should have but was not included in her report. (Rec. 441) Again, Detective Smith was substantially impeached about her investigations into these matters. (Rec. 442)

The forensic evidence that was collected from Gary's residence that reportedly link him to this offense was not possessed or tested for forensic evidence, DNA testing. (Rec. 444)

### JAMIE CRYSTAL JACKSON

Jamie Crystal Jackson was the next witness called during the case-in-chief by the State. Doctor Jackson testified that she worked at the LSU Children's Hospital in New Orleans. (Rec. 444)

The Doctor testified that she was a pediatrician specializing in neglect matter. Dr. Jackson did not have any published documentation and defense counsel objects to her qualifications as an expert witness. (Rec. 452-453, 458)

## LACY GRIFFIN

Lacy Griffin was also called by the State during the case-in-chief. (Rec. 472) Lacy testified that she knew the complainant from school. They were friends from school. (Rec. 473) During recess on one particular day Carley mentioned she had been "touched". Lacy encouraged her to speak about this incident to her parents. (Rec. 473-474)

Lacy was later substantially impeached later during cross-examination which also contributed to the error and prejudice in failing to allow the Petitioner his right to confrontation and cross-examination.

After Lacy's testimony the State rested its case. (Rec. 479)

## SANDY NORDGREN

Mrs. Sandy Nordgren was also called in defense. (Rec. 490) she testified that she was Gary's mother and grand mother to Carley (Rec. 490-491)

As a general rule before Carley would come to she residence to visit, she would call someone who would be waiting. During the date in question, June 07, she visited her residence between 3-4 times, and this was the norm. (Rec. 491)

It would take approximately 3-5 minutes to walk from her residence to her residence. (Rec. 43) Sometimes she would ride the four wheeler, but during this time the four wheeler was in disrepair. (Rec. 494)

Mrs. Nordgren testified she never noticed anything unusual about Carley during June 2007. (Rec. 494) On June 07, she stayed to visit for approximately an hour. She was not upset or did not appear distraught, or crying. (Rec. 495)

9

## BEN ESHLEMAN

Ben was called by the defense as a hostile witness for the defense. (Rec. 510) He testified that he was the father of Carley. He also testified that he was a supervisor in the Detective Investigation Division of the St. Tammany Parish Sheriff's Office. (Rec. 511)

Ben acknowledged that after the death of Gary's father their relationship begun to deteriorate. He instructed his children not to speak to Gary. (Rec. 513, 515, and 523-524)

Mr. Eshleman acknowledged that he requested the taped conversations between Gary and his mother's conversations. Accordingly, he stated a belief that there were possible threats made. However, he never reported any of his beliefs to the Sheriff's Department. (Rec. 518-519)

Ben was also candid in his admissions that he wanted Gary removed from the family estate. He also confirmed that he was a disciplinarian. (522-523)

## GARY NORDGREN

Gary was surprised by the arrest and accusations made against him, he was appalled to learn of these allegation lodged by Ben. (Rec. 564-565) During the taped interview Carley begun to cry after she learned that her that her Uncle would learn of the allegations she was forced to make against her Uncle Gary. (Rec. 586)

The record contains a fatal variance in proof and the bill of information regarding the age of the complainant. The Assistant District Attorney alluded to the age variance during closing arguments. (Rec. 587) The jury was also instructed regarding the variance in age. (Rec. 624) The jury returned a verdict of sexual battery. (Rec. 625)

On July 22, 2010 the defendant appeared for a Motion for New Trial (Rec. 636), counsel noted his objection for the record after the motion was denied. (Rec. 637)

10

During the sentence proceeding, the defendant was arraigned on the Multiple Offender Bill, which was "not tendered" for filing into the record. (Rec. 639) No allegations were read into the record regarding the predicated conviction the State allegedly would proceed under. Defense counsel stipulated to the allegation of a multiple offender on September 2, 2010. (Rec. 644) After a bench conference the defendant was sentenced to term of 49 ½ years within the Louisiana Department of Corrections. (Rec. 648)

CLAIM ONE

**THE INDICTMENT, USED FOR CHARGING THE PETITIONER WAS AN IMPROPER CAPITAL OFFENSE, WAS IMPROPERLY AMENDED, AND OR THE EVIDENCE AT TRAIL AMOUNTS TO A FATAL VARIANCE.**

The record reflects that the Petitioner was indicted for a capital offense, Aggravated Incest, contrary to LA. R.S. 14: 98.1. The Grand Jury returned the indictment premised upon the age of the complainant being eighteen. Notwithstanding the grand jury indictment, Scott Gardner, the then Assistant District Attorney sua sponta amended the indictment, by Bill of Information, thereafter charging the elements of the offense. This was error patent.

**STANDARD OF REVIEW**

Generally, the contemporaneous objection rule requires defense counsel to object to the form of the bill of information, amendment, and prior to the commencement of trial. Defendants failure to request a continuance under La. Code Crim. Proc. Ann. Art. 489 to adequately prepare his case, after objecting to the amendment of an indictment by the State under La. Code Crim. Proc. Ann. Art. 488 after calling the first prosecution witness prevented defendant from claiming any prejudice to his case on appeal **State v. Irvine**, 515 So. 2d 658, 1987 La. App. LEXIS 10606 (La. App. 3 Cir. 1987), reversed by 535 So. 2d 365, 1988 La. LEXIS 2427 (La. 1988).

11

In this case the Petitioner suggests that the variance was highly prejudicial to the Petitioner for several reasons. Foremost, by misstating the age at eighteen the State was then allowed to circumvent the procedures for proper introduction of the video taped statement to be introduced, material unreliable evidence, to the introduced without the protection of confrontation and cross-examination. The Petitioner was tried by ex parte allegations. The variance was not responsive, neither therefore might have required a reversal, or certainly a continuance, absent defense counsels objection. Where defendant was charged with burglary, but entered a plea of guilty to theft of things valued $ 500 or more, his conviction was reversed on appeal.

That crime was not a responsive verdict to the original bill of information charging the defendant with simple burglary, and no oral or written amendment to the original bill of information appeared on the record. **State v. Roark**, La. App. 38248, 870 So. 2d 528, 2004 La. App. LEXIS 833 (La. App. 2 Cir. Apr. 7, 2004).

**LA. R.S. 15:283 PROTECTED PERSON, TESTIMONY TAKEN OUTSIDE COURTROOM** specifies:

> A. On its own motion or on the motion of the attorney for the party, a court may order that the testimony of a protected person who may have been a witness to or victim of a crime be taken in a room other than the courtroom and be simultaneously televised by closed circuit television to the court and jury, when the court makes a specific finding of necessity based upon both of the following:

> (1) Expert testimony that the protected person would be likely to suffer serious emotional distress if forced to give testimony in open court.

> (2) Expert testimony that, without such simultaneous televised testimony, the protected person cannot reasonably communicate his testimony to the court or jury.

B. The court shall ensure that the protected person cannot see or hear the accused unless such viewing or hearing is requested for purposes of identification. However, the court shall ensure that the accused is afforded the ability to consult with his attorney during the testimony of the protected person.

C. The only person who may be present in the room with the protected person are the person of persons operating the audio-video equipment, the presiding judge, the attorneys for the state, the attorneys for the defendant, and any person, other than a relative of the protected person, whose presence is determined by the court to be necessary to the welfare and well-being of the protected person during his testimony. The persons operating the equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see and hear the protected person during his testimony but does not permit the protected person to see or hear them.

D. Only the attorneys, or the presiding judge as authorized by law, may question the protected person.

E. For the purposes of this Section, protected person means a person who is the victim of a crime or a witness in a criminal prosecution who is either of the following:

(1) Under the age of seventeen years.

(2) Has a developmental disability as defined in R.S. 28:451. 2 (12).

In this case it was reversible error to introduce the video tape absent a specific showing that was not applicable to the case-at-bar. Conviction for molestation of a juvenile was reversed because the State presented no case-specific evidence to prove the necessity of protecting the child witness from the trauma of testifying under La. Rev. Stat. Ann. 15: 283, and consequently

the trial court deprived the defendant of his right to confrontation. **State v. Welch**, La. 99-1283, 760 So. 2d 317, 2000 La. LEXIS 979 (La. Apr. 11, 2000).

Welch is very instructive to the instant claim of prejudice by the amendment in the indictment and so held:

"The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "in all criminal prosecutions, the accused shall enjoy the right…to be confronted with the witnesses against him." This right provides "two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." **Coy v. Iowa**, 487 U.S. 1012, 1017, 108 S.Ct. 2798, 2801, 101 L. Ed. 2d 857 (1988). However, public policy considerations and necessities may take precedent over "face-to-face" confrontation. Maryland v. Craig, 497 U.S. 836, 849, 110 S.Ct. 3157, 3165, 111 L. Ed. 2d 666 (1990).


It is important to note that Coy involved a factual situation that was almost identical to the one before us. Relying upon an Iowa statute, the trial court allowed the use of a large screen to be placed between the defendant and the witness stand during the testimony of two thirteen-year-old females. The State argued that the statute created an exception to "face-to-face" confrontation by the legislature's finding that there is a presumption of trauma to victims of sexual abuse that outweighs the defendant's right to confrontation. However, the United States Supreme Court held that the defendant's right to confrontation was violated since the screen enabled the complaining witnesses to avoid viewing the defendant as they gave their testimony. Further, the Court suggested that any exception to "face-to-face" confrontation "would surely be allowed only when necessary to further an important public policy," but only on "something

14

more than the type of generalized finding [a legislative presumption of trauma] underling such a statute." **Coy**, 487 U.S. at 1021, 108 S. Ct. at 2803. However, the Court "left for another day" the question of whether any such exception exists. Id.

In **Craig**, the Supreme Court found an exception for child witnesses in child abuse cases:

Accordingly, we hold that, if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant. **Craig**, 497 U.S. at 855, 110 S. Ct. at 3169. However, the Court held that this finding of necessity must be a case-specific one. The trial court must hear evidence and determine whether the special procedure is necessary to protect the child witness from trauma caused by the presence of the defendant. It is not sufficient for the trial court to find that the witness needs protection from courtroom trauma generally. In addition, "the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis, i.e.,* more than 'mere nervousness or excitement or some reluctance to testify.'" Id. At 856, 110 S.Ct. at 3169.

In accordance with these Supreme Court holdings, the Louisiana Legislature has provided a procedure whereby a Louisiana court can order that the testimony of witnesses under fourteen years of age be taken without "face-to-face" confrontation when the court has made a specific finding of necessity. See La. R.S. 15:283. However, neither the State nor the trial court attempted to comply with this statute, which requires expert testimony that the child would likely suffer

serious emotional distress if forced to give testimony in open court and cannot reasonably communicate his testimony to the court or jury in open court.

We find that the procedure utilized by the trial court her violated the defendant's right to confrontation guaranteed by the Sixth Amendment as interpreted in **Coy** and **Craig**. As can be seen from the record, the State presented no case-specific evidence to prove the necessity of protecting this child from the trauma of testifying against the defendant. The trial court ordered the "screening" of the defendant merely on a generalized statement of possible trauma for child witnesses. The violation of defendant's right to confrontation may be harmless error, **State v. Murphy**, 542 So. 2d 1373 (La. 1989), and is to be analyzed by assuming that the damaging potential of "face-to-face" confrontation was fully realized, then asking whether the reviewing court may conclude that the error was nevertheless harmless [Pg 7] beyond a reasonable doubt. **Delaware v. Van Arsdall**, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). The importance of the testimony of the witness in the state's case, whether it is cumulative, the presence or absence of evidence corroborating or contradiction the testimony, the extent of the cross-examination permitted, and the overall strength of the state's case are factors to be considered in determining whether the error was harmless. Id.; see also **State v. Code**, 627 So. 2d 1373, 1384 (La. 1993) (noting that before a reviewing court declares an error harmless beyond a reasonable doubt it must find that the verdict "actually rendered in this trial was surely attributable to the error'").

In this case, the evidence, other than the victim's testimony, consisted of her hearsay statement to her young friend and the coroner's testimony that the victim's hymen was not intact. Since the coroner's evidence does not necessarily indicate the defendant's guilt, and the

16

remaining evidence rested on the victim's credibility, "face-to-face" confrontation of the victim was extremely important. Under these circumstances, we cannot conclude that the conviction in this case was surely attributable to the confrontation error." Id. 321-322

For this same reasoning the amendment to the indictment was detrimental harmful to the introduction of the tape.

## CLAIM TWO

**THE TRIAL COURT REVERSIBLY ERRED FROM FAILING TO ADJUDICATE THE MOTION TO SUPPRESS THE EVIDENCE CAUSING THE JURY TO BE IMPROPERLY INFLUENCED BASED ON UNRELIABLY TAINTED EVIDENCE**

During the pretrial proceedings in this mater, to the credit of defense counsel, a Motion to Suppress was filed. The District Court continued these matters several times as is the practice within St. Tammany Parish. The District Court will not adjudicate matters pretrial before commencement of the trial. Not only did the Court fail to adjudicate the Motion to Suppress but it also allowed Scott Gardner to introduce protected persons evidence without: a) making a prerequisite showing for the need and b) ensuring that the evidence was reliable and that it had been obtained by sufficient means according the statutory requirements.

Again, the primary error in these omissions is the failure to adjudicate these proceedings pretrial over the substantial delays. While the State enjoys interruption of the prescribe periods when the defendant motions are filed, the prescription is at the determent of the defendant-like here- where no hearing are conducted.

Preservation of Issue

The Petitioner acknowledged that defense counsel did not move to reargue the suppression issues and nor did the state provide sufficient notice of its intent to introduce the

17

evidence. Nothwihtstanding since an initially filed Motion di lie, it would be a fundamental miscarriage of justice not to allow review of this matter. More significantly this court has not hesitated to reverse convictions that pose a miscarriage of justice or substantially affect the rights of the defendant. C. Cr. P. Art. 921. Matters not grounds for reversal

A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused.

In **State v. Edwards**, 569 S. 2d 579, 1990 La. App. LEXIS 2422 (La. App. 2 Cir. 1990), writ of certiorari denied by 576 So. 2d 29, 1991 La. LEXIS 526 (La. 1991), an affidavit that contained inadmissible hearsay, that had been used to obtain a search warrant that had yielded cocaine from defendants car was improperly admitted at defendants criminal trial; where there was no evidence that any State witness was the confidential informant that had provided the noncumulative hearsay in the affidavit or that the error was harmless, reversal was required.

La. C. Cr. P. Article 703

## Art. 703. Motion to Suppress Evidence

A.) A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.

B.) A defendant may move on any constitutional ground to suppress a confession or statement of any nature made by the defendant.

C.) A motion filed under the provisions of this Article must be in accordance with Article 521, unless opportunity therefore did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.

D.) On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.

E.) (1) An evidentiary hearing on a motion to suppress shall be held only when the defendant alleges facts that would require the granting of relief. The state may file an answer to the motion. The defendant may testify in support of a motion to suppress without being subject to examination on other matters. The defendant's testimony cannot be used by the state except for purpose of attacking the credibility of the defendant's testimony at the trial on the merits.

(2) If the defendant testifies before the jury at the trial on the merits, he can be cross examined on the whole case.

F.) A ruling prior to trial on the merits, upon a motion to suppress, is binding at the trial. Failure to file a motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress.

G.) When a ruling on a motion to suppress a confession or statement is adverse to the defendant, the state shall be required, prior to presenting the confession or statement to the jury, to introduce evidence concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement.
A ruling made adversely to the defendant prior to trial upon a motion to suppress a confession or statement does not prevent the defendant from introducing evidence during the trial concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the weight to be given the confession or statement.

The Petitioner suggest that the State did not have probable cause to a) enter his residence, b) seize an applicator, c) introduce the taped statements and, d) or fail to adjudicate the issue pretrial. Pursuant to the *Fourth Amendment and La. Const. art. 1, 5,* the trial court errored in denying defendants motion to suppress the evidence and statement to the police under *La. Code Crim. Proc. Ann. Art.* 703 (D) as the record bore no indicia of any particularized suspicion that defendant was involved with the alleged sexual assault.

This case is substantially similar in fact to that of, **State v. Bell**, 28 So. 3d 502, 2009 La. App. LEXIS 533 (La. App. 4 Cir. 2009), writ denied by 28 So. 3d 1005, 2010 La. LEXIS 533 (La. 2010). Herein, the trial courts denial of defendants motion to suppress was reversed and the evidence seized from the bedroom of defendants residence was suppressed as exception to the search warrant requirement justified the warrantless entry, but the police, having accomplished the purpose for their entry, were nevertheless unreasonable in later entering into defendant's bedroom; the officers must articulate their sense of danger and not a sense of mere curiosity. Having captured their suspect and removed the intruder from defendants home, the police were unreasonable in advancing deeper into the recesses of his home; under the circumstances, the officers protective sweep of defendant's bedroom was unreasonable.

Even if the detectives had probable cause to enter the residence, which was based on the presumption that syringes would be seized; the detectives exceeded the scope of the search in taking the suppository, the other items, and then admitting a tape from the complainant. This was also true to the taped calls from the jail. Certainly, Ben Eshleman did not have sufficient cause to believe that "threats" were being made, and even if so he was obligated to report that to a judicial person in order to obtain a warrant. This illegally taints all stems from the initial search. The cumulative prejudice cannot be disputed; the State was allowed to introduce highly suspect and

20

unreliable evidence to convict the Petitioner. While "reaffirm[ing]" the holding of **Wong Sun v. United States**, 371 U.S. 471, 485, 9 L Ed. 2d 441, 83 S.Ct. 407 (1963), that verbal evidence, like physical evidence, may be "fruit of the poisonous tree," Supreme Court "significantly qualif[ies]" **Wong Sun's** further conclusion, id., at 486, 9 L. Ed. 2d 441, 83 S.Ct. 407, that no "logical distinction" can be drawn between verbal and physical evidence for purposes of the exclusionary rule. **Ante, at 275, 55 L Ed 2d, at 276**

The primary concern here is that although the initial search was lawful, the intervening misconduct, the seizure of the phone calls, the introduction of a video tape, and introduction of the prior crime testimony was highly prejudicial, caused undue surprise, and prevented the petitioner from raising significant challenges pretrial by a Motion to Suppress, Bill of Particulars, and or Motion in Limine.

In resolving questions of attenuation, courts typically scrutinize the facts of the individual case, with particular attention to such matters as the "temporal proximity" of the official illegality and the discovery of the evidence, "the presence of intervening circumstances," and "the purpose and flagrancy of the official misconduct." **Brown v. Illinois**, 422 U.S. 590, 603-604, 45 L Ed 2d. 416, 95 S.Ct. 2254 (1975). The Court retains this general framework, but states that "[a]ttenuation analysis" should be "concerned with the difference between live-witness testimony and inanimate evidence." Ante, at 278-279, 55 L Ed 2d, at 278. *United States v. Ceccolini,* 435 U.S 268, 55 L Ed 2d. 268, 98 S.Ct. 1054 (1978).

Irrefutably a proper Motion was filed and, the Petitioner had significant right to have these matters addressed pretrial absent surprise.

**Preservation of Issue**

Defense counsel filed a post verdict Motion for Acquittal which was denied by the District Court. (Rec. 625)

## CLAIM THREE

## THE EVIDENCE ADDUCED BY THE STATE WAS NOT SUFFICIENT TO UPHOLD A CONVICITON ON THE CRIME CHARGED IN THE INDICTMENT.

The Petitioner also suggests that the evidence produced during the case-in-chief was not sufficient to establish the guilty beyond a reasonable doubt of all the elements of the offense charged.

**Preservation of Issue**

The Petitioner moved for a post verdict Motion of Acquittal which was denied by the District Court. (Rec. 636-637)

The Grand Jury was indicted for Aggravated Incest which requires the State to prove the following elements:

**14:78.1 Aggravated incest**

A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.

B. The following are prohibited acts under this Section:

22

(1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of juvenile or a person with a physical or mental disability, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or ay other involvement of a child in sexual activity constituting a crime under the laws of this state.

(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

C. Consent is not a defense under this Section.

D. (1) A person convicted of aggravated incest shall be fined an amount not to exceed fifty thousand dollars, or imprisoned, with or without hard labor, for a term not less than five years nor more than twenty years, or both.

(2) Whoever commits the crime of aggravated incest on a victim under the age of thirteen years when the offender is seventeen years of age or older shall be punished by imprisonment at hared labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.

(3) Upon completion of the term of imprisonment imposed in accordance with Paragraph (2) of this Subsection, the offender shall b e monitored by the Department of Public Safety and Corrections through the use of electronic monitoring equipment for the remainder of his natural life.

(4) Unless it is determined by the Department of Public Safety and Corrections, pursuant to rules adopted in accordance with the provisions of this Subsection, that a sexual offender is unable to pay all or any portion of such costs, each sexual offender to be electronically monitored shall pay the cost of such monitoring.

(5) The costs attributable to the electronic monitoring of an offender who has been determined unable to pay shall be borne by the department if, and only to, the degree that

sufficient funds are made available for such purpose whether by appropriation of state funds or from any other source.

(6) The Department of Public Safety and Corrections shall develop, and promulgate rules in the manner provided in the Administrative Procedure Act that provide for the payment of such costs. Such rules shall contain specific guidelines which shall be used to determine the ability of the offender to pay the required costs and shall establish the reasonable costs to be charged. Such rules may provide for a sliding scale of payment so that an offender who is able to pay a portion, but not all, of such costs may be required to pay such portion.

E. (1) In addition to any sentence imposed under Subsection D, the court shall, after determining the financial resources and future ability of the offender to pay, require the offender, if able, to pay the victims reasonable costs of counseling that result from the offense.

(2) The amount, method, and time of payment shall be determined by the court either by ordering that documentation of the offenders financial resources and future ability to pay restitution and of the victims pecuniary loss submitted by the victim be included in the presentence investigation and report, or the court may receive evidence of the offenders ability to pay an d the victims loss at the time of sentencing.

(3) The court may provide for payment to a victim up to but not in excess of the pecuniary loss caused by the offense. The offender may assert any defense that he could raise in a civil action for the loss sought to be compensated by the restitution order.

In reviewing the sufficiency of the evidence to support a conviction, a Louisiana appellate court is controlled by the standard enunciated by the United States Supreme Court in **Jackson v. Virginia**, 443 U.S 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). The **Jackson** standard of review, incorporated in LSA-C.Cr.P. art. 821 (B), is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State

24

proved the essential elements of the crime beyond a reasonable doubt. **State v. Ordodi**, 2006-00207, p. 10 (La. 11/29/06), 946 So. 2d 654, 660. The **Jackson** standard is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence. LSA-R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence, **State v. Patorno**, 2001-2585, p.5 (La. App. 1 Cir. 6/21/02), 822 So. 2d 141. The factfinder weighs the respective credibility's of the witnesses, and an appellate court will generally not second-guess those determinations. **State v. Ordodi**, 2006-0207 at p. 10, 946 So. 2d at 660 (citing **State v. Dabney**, 2002-0934, p. 1 (La. 4/9/03), 842 So. 2d 326, 327; **State ex rel. Graffagnino v. King**, 436 So. 2d 559, 563 (La. 1983)).

The state was required to prove the following elements:

C. The following are prohibited acts under this Section:

(1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile or a person with a physical or mental disability, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under that laws of this state.

(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.

**State v. Marrero**, 92 So. 3d 21, 2012 La. App. LEXIS 471 (La. App. 1 Cir. 2012), writ denied by 90 So. 3d 1060, 2012 La. LEXIS 1813 (La. 2012), writ denied by 2013 La. App. LEXIS 1157 (La. App. 1 Cir. June 3, 2013).

The State did not establish the corpus delicti of this offense. The alleged complainant did not take the stand and attest that these alleged incidents occurred, why because they did not. The complainant would not appear in Court and tell the fictitious story that was encouraged by Ben Eshleman.

The State is then precluded to establish *any lewd fondling or touching of the person of either the child or the offender* by ex parte video tape. Furthermore, the testimony introduced by video tape was littered with such inherent contradictions that the court was mandated by its inherent jurisdiction to act as thirteenth juror. **Gibbs v. Florida**, 457 U.S. 31, 102 S.Ct. 2211, 72 L. Ed. 2d 652 (1982).

In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. **State v. Thomas**, 30,490 (La. App. 2 Cir. 4/8/98), 711 So. 2d 808, writ denied, 99-0331 (La. 7/2/99), 747 So. 2d 8, 1999 La. LEXIS 2043.

## CLAIM FOUR

**THE PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO CONFRONTATION AND CROSS EXAMINATION WHEN HIS ACCUSER DID NOT TAKE THE STAND AND AN IMPROPER EVIDENTIARY FOUNDATION RESULTED IN THE INTRODUCTION OF A TAPE INTERVIEW**

The taped statement from a complaining witness cannot be introduced against a criminal defendant. The right to confrontation and cross-examination are so axiomatic to the notations of American Jurisprudence that those rights are ranked fundamental:

26

**Preservation or Error**

The lack of contemporaneous objection generally renders defendant's claim unreviewable. La. C.Cr.P. Art. 841 provides that "an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." The defendant must state the basis for his objection when he makes it so that the trial judge has an opportunity to make the proper ruling and prevent or cure an error. **State v. Jackson**, 450 So. 2d 621 (La. 1984): **State v. Murphy**, 515 So. 2d 558 (La. App. 1 Cir. 1987), writ granted, 530 So. 2d 553 (1988).

In this case defense counsel made a Motion to Suppress that was left not adjudicated. The question then became, can this constitute cause for the default or can the issue be reviewed under the principles of ineffective assistance of counsel.

In **Coy v. Iowa**, 487 U.S. 1012, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1988), the Supreme Court held unconstitutional, a procedure employed similar to the statutory scheme under consideration here. In that case, defendant was convicted of two counts of engaging in lascivious acts with a child. Pursuant to an Iowa statute, the two thirteen year old victims' view of the defendant was blocked by a one-way screen while they testified. The defendant's attorney was allowed to cross-examine the witnesses, but although the defendant could dimly view the witnesses as they testified, they were completely unable to see him. The defendant's objection to the use of the screen was overruled. The Iowa Supreme Court affirmed the conviction, but the U.S. Supreme Court reversed, holding that the statutory procedure permitting the two girls to testify behind a screen violated the Confrontation Clause of the Sixth Amendment, which it said gives the defendant a right to a face-to-face encounter with witnesses.

Here, the error is even more egregious because the Petitioner *was never* allowed to cross examine the witness either before, or during trial. This was a particular problem because the

27

State was allowed to improperly vouch for the credibility of the story of the complainant, and Ben, her father, by the video tape. The jury was never allowed to witness the demeanor of the complainant in telling the tales that were contained in the tape.

In fact the State knew that the complainant refused to take the stand against her Uncle and that Ben made the child state these allegations. Ben admitted to the jury that he would not stop until Gary was in prison. Ben wanted the family Estate after the death of Gary's father. Ben used his position within the St. Tammany Parish Sheriff's Department, used his co-worker, to bring about this prosecution and then worked with Walter Reeds Office, to allow this conviction by the use of the video tape.

The evidence of this Petitioner's innocence is overwhelming. The State, Walter Reeds Office has knowingly convicted hundreds of innocent persons, this is yet another example.

Mr. Nordgren deserves justice, in this case he deserved what the United States Constitution mandates a fair trial, the opportunity to cross examine the alleged witness against him, and the opportunity to compulsory produce those witnesses that will allegedly make these statements.

The fact remains the niece did not make this case, Ben did. There is not any doubt that the constitutional error resulted in a manifest injustice. Defense counsel dropped the ball by allowing this ex parte evidence into the record. It is time to correct this miscarriage of injustice.

28

## CLAIM FIVE

## THE TAPED INTERVIEW EVINCED THAT THE WITNESS WAS IMPROPERLY COACHED BY THE STATE AND THEREFORE THE TAPE WAS NOT RELIABLE

During the trial into this matter, the State actually elicited testimony to the fact that during the taped interview with the complainant, that the testimony was actually coached by ear piece. The interviewer was informed on what questions to ask her though the co-worker of Ben and via a closed system communication ear piece.

The entire testimony was coached and this was not allowed to be cross-examined during trial. The inconsistencies between the statements and video tape seemed irrefutable to the jury. This was the case because the jury was not privy to the inconsistent statements made by the complainant or the testimony to demonstrate Ben's undue influence on the subject.

The complainant has persisted that this incident did not occur, that it was and continues to be Ben, that wanted Gary imprisoned. This is a sad case but a case that could have been prevented by Scott Gardner and Walter Reed.

The fact is that they did not prevent this injustice and actually allowed the case to be manufactured by Ben and his co-worker through the tape recorded statements.

Consequently, it was misconduct to introduce the tapes, the jurisprudence of the United States Supreme Court, together with the Louisiana Revised Statues are very clear on the subject yet the State, through Walter Reed, allowed the tapes notwithstanding.

**15: 283 Protected person; testimony taken outside courtroom;**

A. On its own motion or on the motion of the attorney for any party, a court may order that the testimony of a protected person who may have been a witness to or a victim of a crime be taken in a room other than the courtroom and be simultaneously televised by

29

closed circuit television to the court and jury, when the court makes a specific finding of necessity base upon both of the following:

(1) Expert testimony that the protected person would be likely to suffer serious emotional distress if forced to give testimony in open court.

(2) Expert testimony that, without such simultaneous televised testimony, the protected person cannot reasonably communicate his testimony to the court or jury.

B. The court shall ensure that the protected person cannot see or hear the accused unless such viewing or hearing is requested for purposes of identification. However, the court shall ensure that the accused is afforded the ability to consult with his attorney during this testimony of the protected person.

C. The only person who may be present in the room with the protected person are the person or persons operating the audio-video equipment, the presiding judge, the attorneys for the State, the attorney's for the defendant, and any person, other than a relative of the protected person, whose presence is determined by the court to be necessary to the welfare and well-being of the protected person during his testimony. The persons operating the equipment shall be confined to an adjacent room or behind a screen or mirror that permits them to see or hear the protected person during his testimony but does not permit the protected person to see or hear them.

D. Only the attorneys, or the presiding judge as authorized by law, may question the protected person.

E. For the purposes of this Section, protected person means a person who is the victim of a crime or a witness in a criminal prosecution who is either of the following:

(1) Under the age of seventeen years.

(2) Has a developmental disability as defined in R.S. 28: 451. 2 (12)

30

**15:273 Right of accused to be confronted with witnesses**

The accused shall have the right to be confronted with the witnesses against him and the deposition of witnesses shall not be evidence either for or against him except as provided by law.

Forcible rape conviction was reversed where the trial court erroneously allowed admission of the transcribed statement of defendants cellmate in which he claimed defendant confessed to rape; the State did not establish that the declarant, defendant, was unavailable, and he defendant was denied his constitutional right to cross-examine by the admission of the hearsay statement. **State v. Broussard**, La. App. 01-415, 796 So. 2d 891, 2001 La. App. LEXIS 2099 (La. App. 3 Cir. Oct. 3 2001), writ denied by La. 2001-2977, 825 So. 2d 1187, 2002 La. LEXIS 2815 (La. Sept. 30, 2002).

Conviction for molestation of a juvenile was reversed because the state presented no case-specific evidence to prove the necessity of protecting the child witness from the trauma of testifying under La. Rev. Stat. Ann. 15:283, and consequently the trial court deprived the defendant of his right to confrontation. **State v. Welch**, La. 99-1283, 760 So. 2d 317, 2000 La. LEXIS 979 (La. Apr. 11, 2000).

Both **Welch and Broussard**, are never instructed on this issue and which required reversal of the defendant's conviction.

31

## CONCLUSION

For all the assorted reasons herein contained, this court is asked to reverse this conviction and sentence.

There is a significant probability that the State convicted an innocent man. More probable is that the State knowingly and intentionally, through Walter Reed, did not afford a criminal defendant his constitutional right to a fair trial.

The State did not meet the obligations on the standard of proof, the proper introduction of evidence, and sought a conviction that was based on improper motives.

It is time to finally place this matte to rest and allow justice to be finally served. The State has no interest in the imprisonment of innocent persons, or persons that did not receive a fair trial.

**WHEREFORE** Petitioner PRAYS this Honorable Court grant the Petitioner's Writ of Habeas Corpus and reverse the conviction and sentence of the Petitioner.

Respectfully submitted,

Gary Nordgren #512703
Rayburn Correctional Center
27268 Hwy 21 N
Angie, Louisiana 70426

32

## CERTIFICATE OF SERVICE

I certify that I have served the District Attorney for the Twenty Second Judicial District

Court, a true and correct copy of this supplemental brief, Motion, placing the same in the United

States Mail, first class postage prepaid, in accordance with the prison mail box rule on this

_6_ TH day of _March_ , 2017

Respectfully,

_Gary Norgren 512703_
Gary Norgren

US POSTAGE PITNEY BOWES

ZIP 70426 $ 002.66⁰
02 1W
0001333580 JAN 22 2018

Gary Nordgren #512703
Rayburn Corrections Center
Street-1
27268 Hwy. 21
Angie, La. 70426

Clerk's Office
United States District Court
Eastern District of Louisiana
New Orleans, La. 70130

NOT CENSORED
Not Responsible for Contents

FEB 01 2018

RAYBURN CORRECTIONAL CENTER